Robert P. GOSSE, Plaintiff-Appellant,†

v.

NAVISTAR INTERNATIONAL TRANSPORTATION CORP.,
Defendant-Respondent,

and CATERPILLAR, INC., Defendant.

Court of Appeals

*No. 98–3499. Submitted on briefs September 10,
1999.—Decided December 9, 1999.*

## 2000 WI App 8

(Also reported in 605 N.W.2d 896.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Raymond H. Scott* and *William A. Grunewald* of *Nikolay, Jensen, Scott, Grunewald & Schmiege, S.C.* of Medford.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Webster A. Hart* and *Stephanie L. Finn* of *Herrick, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.* of Eau Claire.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. DYKMAN, P.J. Robert P. Gosse appeals from an order dismissing his claims against Navistar International Transportation Corporation and Caterpillar, Inc.[1] He argues that the trial court erred by concluding that he could not state a claim for personal injury damages based on Wisconsin's "Lemon Law."[2] He also asserts that the court erred by not allowing him to amend his complaint for a third time. Finally, he argues that the special verdict rendered by the jury was inconsistent. We conclude that the Lemon Law does not permit Gosse's claim for personal injury dam-

[1] Pursuant to a stipulation between Gosse and Caterpillar, Caterpillar has been dismissed as a party to this appeal.

[2] Wisconsin's "Lemon Law" permits a customer who purchases a new motor vehicle which does not conform to the vehicle's warrantee to rescind the purchase, and recover costs and damages. *See* § 218.015, STATS.

ages and that the trial court properly exercised its discretion by denying Gosse's motion to amend his complaint. We also conclude that, because Gosse did not object to the form of the verdict at the jury instruction and verdict conference, we cannot review this claim of error. Therefore, we affirm.

## I. Background

¶ 2. On February 1, 1995, Gosse entered into a lease agreement for a new International Tractor truck manufactured by Navistar. Approximately two months later, Gosse brought the truck to an authorized dealer, complaining that it vibrated excessively when operating under a full load. The dealer was unable to stop the vibrations. Gosse returned the truck repeatedly over the next year, but each time, the dealer was unable to correct the problem. On July 8, 1996, Gosse wrote to Navistar, asserting that his truck was a "lemon," and asking Navistar to either repair the truck or allow him to return it for a refund. Navistar wrote back, explaining that the vibration was normal for the type of truck he had leased and declining to make any financial settlement.

¶ 3. On October 9, 1996, Gosse filed a complaint naming Navistar as the defendant. He claimed that his truck was a "lemon" under Wisconsin's Lemon Law, § 218.015, STATS., because the vibrations impaired its use, value and safety. He asserted that the vibrations made the truck defective and valueless, and caused injuries to his hands that would be relieved only if he stopped operating the truck. On June 2, 1997, Gosse filed an amended complaint, adding Caterpillar, Inc., the manufacturer of the truck's engine, as a defendant. He combined all of his complaints against Navistar under one claim, alleging a violation of the Lemon Law.

In a second claim, Gosse asserted that Caterpillar had breached the warranty it provided for the engine, had failed to exercise ordinary care in manufacturing the engine, and was responsible for the damages he incurred under a strict liability theory. On December 4, 1997, Gosse filed a second amended complaint. He repeated the two claims from the previous complaint, and added a claim that Navistar had intentionally misrepresented the truth when it wrote that the vibrations were normal for the type of truck he had leased.

¶ 4. On July 7, 1998, the trial court dismissed Gosse's misrepresentation claim against Navistar. On July 31, 1998, Navistar filed a brief arguing that Gosse could not recover damages for personal injuries under the Lemon Law. At the final pretrial conference on August 18, 1998, the trial court ruled that Gosse could not seek personal injury damages based on the Lemon Law. On August 24, 1998, Gosse filed a motion asking to amend his complaint for a third time. In his proposed third amended complaint, Gosse reasserted his claim under the Lemon Law, separating it into categories for economic losses and personal injuries. He also asserted a claim against Navistar and Caterpillar for negligence or strict liability in their manufacture of the truck and the engine. At a motion hearing on September 1, 1998, the trial court denied Gosse's motion to amend his complaint. The court explained that Gosse could have stated a cause of action for the personal injury damages in his original complaint and that it was too near trial to allow the complaint to be amended.

¶ 5. Before trial, Navistar and Gosse filed several proposed special verdict forms and briefs in support of their proposed verdicts. The court settled on a verdict form that adopted much of Navistar's proposed wording. Trial began on September 10, 1998. On September

17, before submitting the case to the jury, the court held a jury instruction and verdict conference. The only part of the conference that is transcribed is a discussion of the third question on the verdict form, involving the warranty covering the truck. The record does not reveal any objection by Gosse to any of the other questions on the verdict form.

¶ 6. Immediately after the conference, the court instructed the jury that the case would be submitted to them in the form of a special verdict containing fifteen questions. In particular, the court explained that:

> questions 1 and 2 of the special verdict inquire about nonconformity. Question number 1 of the special verdict asks whether the vibration complained of by Mr. Gosse constitutes a nonconformity as that term is defined in the Wisconsin Lemon Law. A "nonconformity" means a condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle or to a component of the motor vehicle, but does not include a condition or defect which is the result of abuse, neglect or unauthorized modification or alteration of a motor vehicle by a consumer.

¶ 7. On September 18, 1998, the jury rendered its verdict. As to Gosse's claim against Navistar, question one of the verdict form asked, "Does the vibration complained of by Mr. Gosse constitute a nonconformity as that term is defined in 218.015, of the Wisconsin Statutes (Wisconsin's 'Lemon Law')?" The jury unanimously answered, "Yes." Question two then asked, "Does said nonconformity substantially impair the use, safety, or value of the truck?" The jury voted ten to two to answer, "No." Since it answered "No" to question two, the jury did not answer any of the

remaining questions regarding Gosse's claim against Navistar.

¶ 8. Gosse filed a post-verdict motion asking the court to change the jury's answers to the verdict form, enter a judgment notwithstanding the verdict, or order a new trial. Gosse argued that question one included all of the elements of a "nonconformity" under the Lemon Law and that question two simply repeated one of those elements. He asserted that, by answering "Yes" to question one, but "No" to question two, the jury had rendered an inconsistent verdict. The court denied Gosse's motion, concluding that questions one and two of the verdict were consistent because they went from a general to a specific inquiry. The court also pointed out that Gosse had not objected to the special verdict form before it was submitted to the jury, and concluded that he had waived any claim of error regarding the verdict. It explained that the jury had followed the verdict form, and if Gosse thought there was a problem with the questions, he should have had the court fix them before it submitted them to the jury. In addition, the court stated that Gosse had an opportunity to raise any problems with the verdict before the jury was dismissed, but he had not done so. The court dismissed Gosse's claims against Navistar and Caterpillar. Gosse appeals.

## II. Analysis

### A. Personal Injury Claim

¶ 9. Gosse argues that the trial court erred when it concluded that Gosse could not state a claim for personal injury damages based on Wisconsin's Lemon Law, § 218.015, STATS. He asserts that § 218.015(7)

169

allows a plaintiff to recover personal injury damages in a Lemon Law action. Section 218.015(7) provides:

> In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

Gosse points out that, in 1985, the legislature amended the section to include the language "may bring an action to recover for any damages caused" by a violation of this section. 1985 Wis. Act 205, § 6.[3] By using the words "any damages," Gosse contends, the legislature intended to allow consumers to recover for all damages that might be linked to a Lemon Law violation.

■■

¶ 10. Statutory construction presents a question of law that we review de novo. *See State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). When we interpret a statute, our purpose is to ascertain the intent of the legislature and give it effect. *See id.* Our first step is to examine the language of the statute, and, absent ambiguity, give the language its ordinary meaning. *See id.* at 225–26, 496 N.W.2d at 179. If the language is ambiguous, we examine the scope, history, context, subject matter and

---

[3] Before 1985, § 218.015(7), STATS., read: "In addition to any other remedies, a consumer damaged by a violation of this section may bring an action for twice the amount of any pecuniary loss, together with costs and disbursements and reasonable attorney fees, and for equitable relief determined by the court." Section 218.015(7), STATS., 1983–84.

purpose of the statute in order to determine the legislative intent. *See id.* at 226, 496 N.W.2d at 179. Statutory language "is ambiguous if reasonable people could disagree as to its meaning." *Id.*

¶ 11. We conclude that the words "any damages" in § 218.015(7), STATS., are ambiguous. Reasonable people might disagree as to whether, by using the words "any damages," the legislature intended to allow a consumer to recover personal injury damages in a Lemon Law action. Thus, we will interpret the language of § 218.015(7) within the context of the Lemon Law's purpose.

¶ 12. Under the Lemon Law, if a motor vehicle does not conform to its express warranty, the nonconformity must be repaired if the consumer makes the vehicle available for repair before the warranty expires or within one year after the vehicle was delivered to the consumer. *See* § 218.015(2)(a), STATS. If the nonconformity cannot be repaired, the manufacturer must accept the return of the vehicle and replace it or provide a refund. *See* § 218.015(2)(b)1–3. As the supreme court stated in *Hughes v. Chrysler Motors Corp.*, the Lemon Law "is violated when the manufacturer fails to voluntarily replace or repurchase the lemon vehicle within 30 days after receipt of the consumer's" demand under § 218.015(2)(c) or (cm). *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 982, 542 N.W.2d 148, 151 (1996). Section 218.015(7) then allows the consumer to enforce the statute by bringing legal action.

¶ 13. We conclude that interpreting the language of § 218.015(7), STATS., to allow recovery for personal injury damages would be contrary to the purpose of Wisconsin's Lemon Law. As we stated in *Church v.*

171

*Chrysler Corp.*, the "Lemon Law was enacted to deal with an increasing number of warranty disputes between manufacturers and consumers." *Church v. Chrysler Corp.*, 221 Wis. 2d 460, 468, 585 N.W.2d 685, 688 (Ct. App. 1998). The supreme court explained:

> We realize that car manufacturers do not deliberately set out to manufacture a lemon. Quite the opposite. In fact, it is in their own best interest not to do so. However, an unfortunate fact of life, seemingly as inevitable as night following day, is that occasionally a "lemon" will slip through the line . . . . [The Lemon Law's] principle motivation is not to punish the manufacturer who, after all, would far prefer that no "lemons" escape their line. Rather, it seeks to provide an incentive to that manufacturer to promptly return those unfortunate consumers back to where they thought they were when they first purchased that new automobile.

*Hughes*, 197 Wis. 2d at 986–87, 542 N.W.2d 152–53. The Lemon Law was enacted to give consumers a means by which to ensure that a newly purchased vehicle would conform to its warranty. Allowing a consumer to seek personal injury damages under the Lemon Law does not further that purpose.

¶ 14. Considering the Lemon Law's purpose, § 218.015(7), STATS., does not allow a consumer to seek personal injury damages for a Lemon Law violation. Section 218.015(7) allows the consumer to bring an action "to recover for any damages caused by a violation of this section." The Lemon Law is violated when a vehicle does not conform to the express warranty, and the manufacturer does not fix the nonconformity, replace the vehicle, or give the consumer a refund. To interpret § 218.015(7) to mean that personal injuries could be caused by a violation of the Lemon Law would

impermissibly expand the scope of the statute. Section 218.015(7) gives the consumer a means by which to enforce the warranty provided by the manufacturer. *See Church*, 221 Wis. 2d at 468, 585 N.W.2d at 688. As § 218.015(5) provides, Gosse was not precluded from asserting a second claim under another law to recover damages for personal injuries he asserts were caused by a defective truck.[4] However, the Lemon Law does not permit a consumer to enforce a warranty by claiming damages for personal injuries. If a vehicle's construction is so defective that it causes injury to the consumer, the consumer can both pursue Lemon Law remedies to get the vehicle repaired, replaced, or to obtain a refund, and bring a separate claim for personal injuries under appropriate law.

## B. Third Amended Complaint

¶ 15. Gosse asserts that the trial court erred when it did not allow him to amend his complaint for a third time after it ruled that he could not seek personal injury damages under the Lemon Law. Gosse contends that Navistar strategically waited until shortly before trial to argue that Gosse could not seek personal injury damages as part of his Lemon Law claim. By waiting to make its argument, instead of doing so when it first became obvious that Gosse sought damages for personal injuries, Navistar could assert that Gosse should not be permitted to amend his pleadings in order to seek redress for his injuries in another manner.

---

[4] Section 218.015(5), STATS., states, "This section does not limit rights or remedies available to a consumer under any other law."

¶ 16. Under § 802.09(1), STATS., a party may amend pleadings once as a matter of course within six months after filing the summons and complaint. A trial court has the discretion to decide whether to permit any subsequent amendments. *See Rendler v. Markos*, 154 Wis. 2d 420, 433, 453 N.W.2d 202, 207 (Ct. App. 1990). We will not overturn a trial court's decision absent an erroneous exercise of discretion. *See id.* A court has properly exercised its discretion "when it relies upon facts of record and applicable law and articulates a reasonable rationale justifying its decision." *Id.*

¶ 17. We conclude that the trial court properly exercised its discretion by denying Gosse's motion to amend his complaint. Gosse filed his motion more than a year and ten months after filing the original complaint, and only two-and-one-half weeks before trial was to begin. The court explained that Gosse could have stated an alternative cause of action for the personal injury damages in his original complaint and that there was too little time before trial to allow the amendment. Gosse's proposed third amended complaint raised negligence and strict liability claims against Navistar for the first time. Considering that Gosse had already amended his complaint twice and that trial was imminent, the trial court's decision was reasonable. And we see nothing prohibiting Navistar from arguing in its trial brief that Gosse was not entitled to special verdict questions concerning personal injuries.

## C. Form of The Verdict

¶ 18. Gosse argues that the jury verdict was inconsistent and is grounds for a new trial. He asserts that questions one and two of the verdict form were repetitive because, by definition, a "nonconformity" substantially impairs the use, value or safety of a motor vehicle, as the trial court explained in its jury instructions.[5] Since question one asked whether the vibration in the truck was a nonconformity, there was no need to ask, in question two, whether the nonconformity substantially impaired the use, safety, or value of Gosse's truck. Gosse contends that the jury's verdict was inconsistent because it gave opposite answers to questions one and two.

¶ 19. However, under § 805.13(3), STATS., the failure to object at the jury instruction or verdict conference "constitutes a waiver of any error in the proposed instructions or verdict." We have no power to review waived error of this sort.[6] *See State v. Schumacher*, 144 Wis. 2d 388, 408–09, 424 N.W.2d 672, 679–80 (1988). As Gosse did not object to the questions on the verdict form at the jury instruction and verdict conference, we cannot review his claim of error.

---

[5] Section 218.015(1)(f), STATS., defines a "nonconformity," in part, as "a condition or defect which substantially impairs the use, value or safety of a motor vehicle."

[6] The common-law discretionary power of review is different from our discretionary power of reversal under § 752.35, STATS. The supreme court explained in *Vollmer v. Luety* that we may exercise our discretionary power of reversal under § 752.35 when waived error results in the real controversy not being fully tried or justice miscarrying. *Vollmer v. Luety*, 156 Wis. 2d 1, 17, 456 N.W.2d 797, 805 (1990). Gosse does not contend that this has occurred.

¶ 20. Gosse argues that, although he did not expressly state that he was doing so, he did object to the form of the verdict. He points out that he submitted proposed special verdicts and argued that his proposed verdicts would be the most appropriate to use. He asserts that no further objection was necessary when the trial court did not accept his proposals. We disagree. In order to preserve an objection to the verdict for appeal, a party must make "a specific objection which brings into focus the nature of the alleged error." *Wright v. Mercy Hosp. of Janesville, Wis., Inc.*, 206 Wis. 2d 449, 463, 557 N.W.2d 846, 852 (Ct. App. 1996). Although Gosse advocated for his proposed verdict forms, once the trial court decided on the verdict that would be submitted to the jury, Gosse did not object and assert that questions one and two were redundant. Without such an objection, the trial court was not given an opportunity to correct the potential error, *see id.*, and we cannot review the issue.

¶ 21. Gosse also contends that it was the jury's answers to questions one and two that created the inconsistency, and without knowing those answers, he could not object at the jury instruction and verdict conference. He asserts that, under *Westfall v. Kottke*, 110 Wis. 2d 86, 328 N.W.2d 481 (1983), it was appropriate for him to raise his objections to inconsistent answers in a post-verdict motion. In *Westfall*, the jury did not follow the trial court's instructions and, as a result, rendered an inconsistent verdict.[7] *Id.* at 92–94, 328 N.W.2d at 485–86. The supreme court held that, in

---

[7] In *Westfall*, the jury was instructed not to answer a comparative negligence question unless it first found that more than one person was causally negligent. *Westfall v. Kottke*, 110 Wis. 2d 86, 93, 328 N.W.2d 481, 486 (1983). Although the jury found only one person to be causally negligent, it then answered

such cases, if the inconsistent verdict is not rectified by resubmission to the jury with instructions to correct its error, a new trial is required. *See id.* at 100, 328 N.W.2d at 489. However, *Westfall* is not applicable here, because, in this case, the jury followed the instructions. The jury simply answered question one "Yes," and, as the verdict form instructed, then answered question two. Since it answered question two "No," the jury correctly did not answer questions three through eight. Gosse's claim of error lies with the verdict questions themselves, which, he argues, produced an inconsistent verdict. Such potential error should have been evident at the jury instruction and verdict conference, and Gosse should have raised his objection then, as required by § 805.13(3), STATS.

*By the Court.*—Order affirmed.

the comparative negligence question, apportioning the negligence between two people. *See id.* at 91, 328 N.W.2d at 485.