KESSLER, P.J.
¶ 1 Mercedes-Benz USA, LLC (Mercedes-Benz), appeals an order denying its motions after verdict and granting judgment and costs to Michelle Hinkley in this lemon law action. Both parties filed actions against each other. The cases were consolidated in the trial court. We affirm.
BACKGROUND
¶ 2 The facts of this case are essentially undisputed. The legal implications of those facts, however, are hotly disputed. In September 2013, Hinkley leased a Mercedes-Benz vehicle from International Autos, Inc., in Milwaukee. On July 7, 2014, Hinkley, through counsel, sent a "Motor Vehicle Lemon Law Notice" to Mercedes-Benz. The notice demanded relief pursuant to WIS. STAT. § 218.0171(2)(b) (2015-16),[1] specifically demanding "[a] refund calculated in accordance with the Lemon Law, plus collateral costs." The notice also directed Mercedes-Benz to communicate with Hinkley through her counsel and "offer[ed] to return [the] vehicle and transfer title after the manufacturer meets [Hinkley's] demand for Lemon Law relief." Section 218.0171(2)(c) requires the manufacturer to provide the consumer with a refund no later than thirty days after the consumer offers to transfer title of the vehicle. See id.
¶ 3 On August 5, 2014, counsel for Mercedes-Benz responded to Hinkley's counsel. Mercedes-Benz stated that it would provide Hinkley with a refund and suggested that Hinkley bring the vehicle to the car dealership the following day to transfer title and receive a refund. Mercedes-Benz calculated Hinkley's refund "[in] accordance with [ WIS. STAT. §] 218.0171(2)(b)3." and determined the amount to be $572.22. Mercedes-Benz included its calculations in its correspondence, which showed that Mercedes-Benz arrived at the refund amount by subtracting a reasonable use allowance and a previous loan balance from the amount of lease payments Hinkley had made.
¶ 4 Counsel for both parties then exchanged multiple responses in which they disputed the refund amount. On August 7, 2014, the final day for Mercedes-Benz to provide Hinkley a refund pursuant to WIS. STAT. § 218.0171(2)(c), Hinkley's counsel demanded a refund in the amount of $7058.81.[2] Hinkley's counsel concluded the refund demand by stating:
Ms. Hinkley will accept a refund in the sum of $7,058.81 ... and return the subject vehicle upon receipt of such refund.... Attempting to schedule a time and place for exchange of the refund check and return of the vehicle is futile unless or until the parties reach an agreement as to the refund amount.
¶ 5 Mercedes-Benz did not respond. Instead, on August 11, 2014, Mercedes-Benz filed a declaratory judgment action in Waukesha County Circuit Court asking the court to compel Hinkley to either accept its calculated refund and return the vehicle or to declare that Hinkley was not entitled to any remedies due to her failure to comply with the lemon law statute. Mercedes-Benz also deposited a refund check in the amount of $572.22 with the Waukesha County Clerk of Courts. Hinkley responded by filing her own action in Milwaukee County Circuit Court based upon Mercedes-Benz's failure to issue a refund within the thirty-day statutory period. The matters were consolidated.
¶ 6 Both parties ultimately moved for summary judgment arguing that the other violated the lemon law.[3] The trial court denied both motions with the exception of one issue-the court found that in calculating statutory damages, Mercedes-Benz properly deducted Hinkley's loan balance on a prior vehicle from her refund. Subsequently, the trial court revisited its summary judgment ruling. The court found that Mercedes-Benz violated its statutory lemon law obligations by failing to deliver a refund check to Hinkley or her counsel during the thirty-day statutory window. Instead of providing the refund check to either Hinkley or her attorneys, Mercedes-Benz deposited the check with the Waukesha County Clerk of Courts after the thirty-day window had passed. The court found that both actions violated Mercedes-Benz's obligations under the lemon law.
¶ 7 The matter ultimately proceeded to trial on two issues. The only issue relevant to this appeal is Mercedes-Benz's claim that Hinkley intentionally interfered with Mercedes-Benz's ability to provide a refund within thirty days because Hinkley refused to return the vehicle unless she received the refund amount she requested.[4] The trial court directed a verdict for Hinkley on that affirmative defense, stating:
[T]here was nothing preventing Mercedes-Benz ... from sending a check in any amount to the acknowledged representatives of Ms. Hinkley, her law firm ... Mercedes-Benz was provided the address and the means to send a check in any amount.
... [Mercedes-Benz does not] have anything more than a consistent statement by Ms. Hinkley ... to form the basis to find that there was intentional interference here.
I don't believe, based on the record, that a reasonable jury could find that there's intentional interference with Mercedes-Benz'[s] ability to send a refund within the statutory period required[.]
¶ 8 Mercedes-Benz moved for judgment notwithstanding the verdict, arguing that "Hinkley and her attorneys intentionally prevented [Mercedes-Benz] from providing her with a refund within the 30 day statutory period by refusing to accept the refund, refusing to return the motor vehicle, and refusing to provide [Mercedes-Benz] with a time and place to provide ... the refund." Alternatively, Mercedes-Benz requested a new trial.
¶ 9 The trial court denied the motions, finding that Hinkley made a valid lemon law demand and that Mercedes-Benz violated its statutory obligations. The court stated:
The Court finds that the refund was never tendered either to Ms. Hinkley or her agents, counsel. And that was the primary issue in this case, not whether the refund calculation was reasonable. Mercedes didn't issue a refund to Ms. Hinkley.
Instead, the question in this case was what amount, if any, is due to her under the Lemon Law....
....
... [M]anufacturers have two options when a refund is in dispute. The first is to pay the amount demanded by the purchaser within the 30-day period, or pay the amount which the manufacturer deems appropriate within the 30-day period....
... And because the plaintiff refused to pay the amount demanded by the defendant, Mercedes' only remaining option was to pay her the amount they believed was appropriate.
... [T]he check was written for $572.22, that check was delivered to International Auto and then the Clerk of Courts, never Ms. Hinkley or her counsel.
... [T]he language of the statute is unambiguous ... the statute requires the manufacturer shall provide the refund to the consumer.
....
... Ms. Hinkley's initial Lemon Law notice contained an unequivocal unambiguous offer to return the vehicle and transfer title. The fact that she later made statements that she would not return the vehicle until she got a proper refund does not withdraw her Lemon Law claim or otherwise prevent her from seeking double damages.
(Some formatting altered.)
¶ 10 The trial court ultimately entered judgment in favor of Hinkley for $409,275.67, which the court calculated was twice the amount of the entire lease obligation, attorney fees, and costs.[5]
¶ 11 Mercedes-Benz appeals.
STANDARD OF REVIEW
¶ 12 We review a directed verdict by viewing "the evidence which is most favorable to the party ... against whom the verdict was sought to be directed" and "[i]f there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury." See Zillmer v. Miglautsch , 35 Wis. 2d 691, 699, 151 N.W.2d 741 (1967). "If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts." Id. (internal citations omitted). " 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable [person].' " State v. Leach , 124 Wis. 2d 648, 664, 370 N.W.2d 240 (1985) (citation and quotation marks omitted).
¶ 13 Statutory interpretation is a question of law we review de novo . See Estate of Riley ex rel. Riley v. Ford Motor Co. , 2001 WI App 234, ¶ 7, 248 Wis. 2d 193, 635 N.W.2d 635. This case involves interpretation and application of WIS. STAT. § 218.0171.
DISCUSSION
¶ 14 All of Mercedes-Benz's arguments on appeal are based on its claim that Hinkley is responsible for its failure to timely pay the required refund because Hinkley refused to return the vehicle unless her refund demand was met. The argument is couched in terms of impossibility of performance. Mercedes-Benz also contends: (1) Hinkley's lemon law notice became defective because she later refused to return the vehicle unless Mercedes-Benz provided her with remedies not required by the lemon law; (2) Mercedes-Benz made a refund "available" within thirty days when it offered to give Hinkley a check if she came to the dealership the next day; and (3) Hinkley intentionally interfered with Mercedes-Benz's ability to provide a refund. Thus, Mercedes-Benz concludes that either judgment should be entered in its favor or it should receive a new trial.
Wisconsin Lemon Law
¶ 15 The Wisconsin Lemon Law protects consumers who purchase new vehicles that turn out to be defective. See WIS. STAT. § 218.0171 ; see also Garcia v. Mazda Motor of Am., Inc. , 2004 WI 93, ¶ 9, 273 Wis. 2d 612, 682 N.W.2d 365. A new vehicle is considered defective essentially when it fails to perform properly within the first year and the manufacturer is unable to fix the problem. See § 218.0171(2)(a). If the vehicle is not successfully repaired, and the vehicle is out of service for a specific period, the consumer can demand either a replacement vehicle or a refund of the purchase price and other items defined by statute. See §§ 218.0171(1)(h)1. and 2., 218.0171(2)(b) 2.a. and 2.b.
¶ 16 WISCONSIN STAT. § 218.0171(2)(c) describes the sequence of reciprocal duties imposed on the consumer and the manufacturer of the defective vehicle:
[A] consumer ... shall offer to the manufacturer of the motor vehicle having the nonconformity to transfer title of that motor vehicle to that manufacturer. No later than 30 days after that offer , the manufacturer shall provide the consumer with the refund . When the manufacturer provides the refund, the consumer shall return the motor vehicle ... to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer.
(Emphasis added.) These duties are sequential. The obligation of each party is triggered by the performance of the preceding obligation by the other party.
¶ 17 If a party fails to perform the duties required by WIS. STAT. § 218.0171(2)(c), available damages are described by § 218.0171(7)(a) :
In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section if the action is commenced within 36 months after first delivery of the motor vehicle to a consumer. The court shall award a consumer who prevails in such an action the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and may award any equitable relief the court determines appropriate.
¶ 18 WISCONSIN STAT. § 218.0171(2)(b)2. provides that the refund is to be calculated to include:
[T ]he full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use . Under this subdivision, a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 ... and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer.
(Emphasis added.)
¶ 19 "[O]nce the consumer makes an offer to transfer title, the burden is on the manufacturer to comply with the thirty-day requirement regardless of whether items or amounts are in dispute." Church v. Chrysler Corp. , 221 Wis. 2d 460, 469, 585 N.W.2d 685 (Ct. App. 1998). The time period for payment of the refund by the manufacturer is "not suspended or delayed by the parties' disagreement" over the refund amount. Id. at 463. If the manufacturer does not provide the refund within thirty days, the consumer will be entitled to the statutory remedies. Marquez v. Mercedes-Benz USA, LLC , 2008 WI App 70, ¶ 1, 312 Wis. 2d 210, 751 N.W.2d 859 ("Marquez I "). If the parties disagree on the refund amount, "the manufacturer [has] two options: (1) pay the amount demanded by the purchaser within the thirty-day period; or (2) pay the amount which the manufacturer deems appropriate within the thirty-day period." Church , 221 Wis. 2d at 469. "If the manufacturer pays the amount demanded by the consumer, the matter is obviously concluded. If the manufacturer pays the amount it deems appropriate, the consumer may take the matter to court." Id. "There the issue will not be whether payment has been made within thirty days, but rather whether the amount of the refund was correct." Id. "If the fact finder determines that the refund amount was correct, the manufacturer wins and suffers no penalties under the Lemon Law. If the fact finder determines that the refund amount was insufficient, the manufacturer loses and suffers the penalties imposed by the statute." Id.
¶ 20 When a manufacturer's failure to provide the consumer with a refund has been established, the consumer may obtain certain financial payments from the manufacturer under WIS. STAT. § 218.0171(7)(a) :
In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section if the action is commenced within 36 months after first delivery of the motor vehicle to a consumer. The court shall award a consumer who prevails in such an action the amount of any pecuniary loss , together with costs, disbursements and reasonable attorney fees , and may award any equitable relief the court determines appropriate.
(Emphasis added.)
¶ 21 Here, the parties disputed the amount of Hinkley's refund, leaving Mercedes-Benz with two clear options: (1) provide Hinkley with a refund in the amount it calculated of $572.22, or (2) provide Hinkley with a refund in the amount she demanded of $7058.81. Mercedes-Benz did neither.
¶ 22 Mercedes-Benz maintains that it complied with its statutory obligations because it "made available" a refund to Hinkley through her counsel-Hinkley just refused to accept it. Mercedes-Benz's argument is based upon various dictionary definitions of the statutory term "provide" that Mercedes-Benz equates with "make available." Mercedes-Benz claims that it twice "made available" its calculated refund to Hinkley's counsel by trying to arrange a time and place to exchange the vehicle for the refund within the statutory window, but counsel refused. Mercedes-Benz contends that it was not required to "chase down an uncooperative consumer" whose personal contact information it did not have. We are not persuaded by Mercedes-Benz's characterization of its statutory obligations.
¶ 23 Mercedes-Benz is correct that it was not required to "chase down" Hinkley; however, Mercedes-Benz was never expected to do so. In her initial notice of claim, Hinkley instructed Mercedes-Benz to deal with her only through her attorneys, who were clearly identified, along with their address. Therefore, Mercedes-Benz's argument that it could not contact Hinkley ignores Hinkley's initial notice. It is well-established that attorneys are agents of their clients. See Estate of Miller v. Storey , 2017 WI 99, ¶ 61, 378 Wis. 2d 358, 903 N.W.2d 759. Mercedes-Benz's contact with Hinkley's attorneys was the equivalent of contact with Hinkley for lemon law purposes. Accordingly, Mercedes-Benz clearly violated its statutory obligations. The statute and case law are clear that the refund is to be delivered to the consumer within thirty days of a lemon law notice. Mercedes-Benz fulfilled neither obligation. In construing the Wisconsin Lemon Law, the Court of Appeals for the Seventh Circuit held that the statute "requires manufacturers to actually refund the money due within 30 days, not simply to agree to do so." James Michael Leasing Co. v. PACCAR, Inc. , 772 F.3d 815, 821 (7th Cir. 2014) ; see also Estate of Riley , 248 Wis. 2d 193, ¶¶ 8-9 (delivery of the refund check to the dealership's sales manager is not delivery to the consumer; sending a timely fax to the consumer's attorney is not delivery to the consumer).
¶ 24 Mercedes-Benz's contention that Hinkley prevented it from delivering the refund is also unconvincing. "If a manufacturer raises the affirmative defense that the consumer prevented it from providing a refund within the 30-day statutory period under the Lemon Law, it must prove that the consumer did so intentionally." Marquez v. Mercedes-Benz USA, LLC , 2012 WI 57, ¶ 10, 341 Wis. 2d 119, 815 N.W.2d 314 ("Marquez II "). In Marquez II , the Wisconsin Supreme Court concluded that "[t]he 30-day period is rigidly enforced even when a consumer's negotiations 'undoubtedly complicate[ ] the process,' despite the fact that it puts the manufacturer 'in a difficult position with attendant risk.' " Id. , ¶ 100 (citation omitted, second set of brackets in Marquez II ). That thirty-day period is "rigidly enforced" even where a consumer "cease[s] negotiations and ma[kes] a clear request for a refund." Id. The court concluded that a consumer's attempt to negotiate a specific refund is not enough to support a finding that a consumer intentionally prevented a manufacturer from complying with the statute. See id.
¶ 25 Here, Mercedes-Benz offers nothing more than negotiations between counsel-which did not resolve the dispute-as evidence of "intentional interference" by Hinkley. Mercedes-Benz appears to suggest that it could not make a refund payment in compliance with the statute unless the amount was agreed upon. There is no such statutory provision, nor is this suggestion on par with case law, which clearly holds otherwise. Further, Marquez II clearly holds that negotiations themselves are not evidence of a consumer's intent to prevent the manufacturer from paying the refund. See id. The record here discloses no evidence that Hinkely did anything during the thirty-day window other than negotiate for more money. That is not evidence that Hinkley intentionally prevented Mercedes-Benz from paying the amount it believed was due within the statutory window. Depositing a refund check with the Waukesha County Clerk of Courts after the thirty-day deadline does not even come close to fulfilling the statutory requirement that Mercedes-Benz provide Hinkley (through counsel, per her instructions) with the refund within thirty days.
¶ 26 Like the trial court, based on the language of the statute, the undisputed facts, and the relevant case law, we reject Mercedes-Benz's arguments and affirm.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Hinkley's counsel reached that amount by adding the amount paid under the lease with the amount of a previous loan balance and then subtracting a reasonable use allowance based upon "Mercedes-Benz'[s] expectation that [the] vehicle will last over 200,000 miles." Mercedes-Benz's calculation of $572.22 subtracted Hinkley's previous loan balance and a reasonable use allowance based upon 100,000 miles, as noted in the statute.

Mercedes-Benz filed a "Declaratory Summary Judgment" motion.

The jury was only asked to determine what number in the denominator of the fraction established by statute should be used to calculate the remaining useful life of the vehicle in this case. The jury concluded 100,000 was the proper denominator. Mercedes-Benz moved for judgment notwithstanding the verdict.

See Wis. Stat. § 218.0171(7)(a).